| | |
|---|---|
| HONORABLE RONALD B. LEIGHTON | |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEPHAN TUTTLE, | CASE NO. C17-5567 RBL |
| Plaintiff, | ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CENTRAL KITSAP SCHOOL DISTRICT, | |
| Defendant. | |

THIS MATTER is before the Court on Defendant Central Kitsap School District's (CKSD) Motion for Summary Judgment [Dkt. #12]. Plaintiff Stephan Tuttle's Complaint stems from the allegedly inadequate education provided by CKSD when Tuttle was formerly enrolled as a special education student. CKSD moves for summary judgment, arguing that Tuttle dismissed all of his claims with prejudice as part of two prior settlement agreements, and that he is precluded from re-litigating his claims in the present lawsuit. Tuttle acknowledges that he dismissed some of his claims as part of the settlement agreements with CKSD, but contends that he is not bound by those agreements because CKSD has failed to perform its obligations under those contracts. Neither party has requested oral argument on the motion.

# I. BACKGROUND

Stephan Tuttle was enrolled as a student in CKSD from 2011–2014. At all times relevant to this lawsuit, Tuttle was a special education student eligible to receive certain special education services through an Individualized Education Program (IEP). Tuttle has various health issues as well as several disabilities which impact his ability to learn including Asperger's syndrome, Post-Traumatic Stress Disorder, and Attention Deficit Hyperactive Disorder. Compounding his various health and learning challenges, Tuttle suffered a Traumatic Brain Injury in a January 2012 car accident. The accident left Tuttle with multiple debilitating symptoms which prevented him from attending school. Tuttle's post-accident condition and inability to attend school led to a dispute between CKSD and Julie Tuttle (Stephan's mother) over the proper educational program to meet Stephan's needs.

**A. The Tuttles file a due process hearing request resulting in the First Settlement Agreement.**

CKSD developed a plan for Stephan's education after his accident which the Tuttles considered unworkable given Stephan's symptoms. Julie Tuttle was dissatisfied with the progress on developing a suitable IEP for her son and filed a due process hearing request under the Individuals with Disabilities Education Act (IDEA) in January 2014. Dkt. 17-1. The request "alleged that the District failed to offer [Stephan] a free, appropriate public education (FAPE), in part through an appropriately developed and implemented IEP, during the 2011–12, 2012–13, and 2013–14 school years. The Complaint also challenged the appropriateness of [Stephan's] re-evaluations during the same time period." Dkt. 15 at 4.

The Tuttles reached a settlement agreement with CKSD on February 18, 2014. Dkt. 17-2. As part of the settlement, the District agreed to: (1) provide Stephan with two hours of in-home instruction five days a week; (2) complete a reevaluation to identify Stephan's "current

educational needs and recommend appropriate special education and related services based upon those needs" by April 21, 2014; (3) develop a new IEP incorporating the results of the reevaluation by May 21, 2014; (4) provide Stephan with an additional year of special education services (to occur during the 2015–16 school year); and (5) pay $1,000 to Julie Tuttle as reimbursement for professional services related to her son's education program. In exchange, the Tuttles agreed to dismiss their due process complaint with prejudice and waive and release all claims arising or relating to the:

> District's treatment of [Stephan] or the District's provision or attempts to provide IDEA or Section 504 services to or for [Stephan] occurring prior to the execution of this Agreement, including but not limited to claims purportedly set forth in the Complaint or any other claims arising under the IDEA, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, Title 42 U.S.C., the Washington Constitution, RCW Chapter 49.60, 34 CFR Part 300, and WAC 392-172A, or any other law or court decisions.

Dkt. 17-2 at 4.

**B. Tuttle withdraws from CKSD.**

The First Settlement Agreement proved unsuccessful. Julie Tuttle faulted CKSD for assigning six different paraeducators to provide in-home education to Stephan over the course of ten months, causing a lack of stability in her son's educational program. She alleged that CKSD failed to timely perform its reevaluation of Stephan or develop a new IEP as required under the terms of the First Settlement Agreement and criticized the educational program provided to Stephan as not meeting his academic and functional needs. Dkt. 17-3 at 8. In December 2014, Julie withdrew Stephan from CKSD and enrolled him in the Shoreline School District.[1] Dkt. 12 at 3; Dkt. 17-3 at 9. Julie requested that CKSD continue to provide compensatory education for

---

[1] The Tuttles assert in their Second Due Process Hearing Request that their relocation out of CKSD was motivated by their imminent homelessness and the availability of temporary housing in Shoreline. Dkt. 17-3 at 9.

Stephan pursuant to the First Settlement Agreement even though the Tuttles no longer resided within the boundaries of the District.

1. January 5, 2015 Prior Written Notice Letter

On January 5, 2015, The Special Services Director for CKSD sent the Tuttles a "Prior Written Notice" letter. Dkt. 13 at 2–3. The letter explained that Stephan was entitled to twenty hours of additional compensatory education to make up for ten days in December 2014 where the District did not provide a paraeducator for Stephan's in-home instruction, but implied that the provision of any educational services was contingent on the Tuttles residing within CKSD's boundaries:

> Per the prior written agreement with you, the District will continue to offer Stephan IEP services through June, 2016. Such services will be offered upon Student's presentation of proof of residency within the boundaries of Central Kitsap School District.
>
> If Stephan returns to residency within the District prior to June 2016, 20 additional hours beyond his then-current IEP services would be added to compensate him for the missed hours in December . . .
>
> Offering Stephan education services after his re-location to Shoreline School District. This option was rejected, as such services are available only to residents of the Central Kitsap School District. Shoreline, as the new resident district, will be responsible for Stephan's education services, unless and until Stephan moves back to a residence within Central Kitsap School District.

*Id*. Tuttle remained enrolled in the Shoreline School District and did not return to CKSD.

**C. The Tuttles file another due process hearing request resulting in the Second Settlement Agreement.**

On February 22, 2016, Julie Tuttle filed a second due process hearing request. Dkt. 17-3. Tuttle's second complaint highlighted numerous perceived deficiencies with CKSD's compliance with the First Settlement Agreement. *Id*. Tuttle alleged "the program provided to Stephan was inappropriate and ineffective," and requested that CKSD provide compensatory education. *Id*. at 7, 10. The parties executed a Second Settlement Agreement on March 30, 2016,

in which CKSD agreed to pay $20,000 to Julie Tuttle. Dkt. 17-4 at 2. Of significance to this suit, the Second Settlement Agreement provided:

> 2. **_Waiver and Release_**. Except for the obligations and liabilities created under this Agreement, Student, and his heirs, successors in interest, attorneys, representatives, and assigns, hereby fully, finally and irrevocably waives, releases and discharges the District . . . from any and all liabilities, claims, demands, debts, or causes of action arising under the IDEA between March 1, 2014 and January 15, 2015, including claims or causes of action for attorneys' fees, expert fees, costs and expenses, that arose out of or relate to the District's provision or attempts to provide IEP services to or for Student during that time period. Student's waiver and release does not extend to any claims arising outside this time period.
>
> . . . .
>
> 6. **_Entire Agreement_**. This Agreement contains the entire Agreement between the Parties, and supersedes any prior agreements concerning the subject matter. This Agreement does not supersede any Party's obligations under the Settlement Agreement entered on February 18, 2014 except to the extent that agreement concerned IDEA claims arising between March 1, 2014 and January 15, 2015. No representations, oral or otherwise, express or implied, other than those contained herein have been made by any Party hereto. No provision of this Agreement may be changed, waived, or modified except in writing signed by the party to be bound.

*Id.* at 2–3.

Tuttle filed the present lawsuit in July 2017, asserting five claims related to CKSD's alleged failure to provide for his educational needs. Dkt. 1.

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.

1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

### III. DISCUSSION

In this Complaint, Stephan Tuttle alleges that CKSD: (1) denied him a FAPE under the IDEA; (2) denied him a FAPE under Section 504 of the Rehabilitation Act; (3) breached the First Settlement Agreement by not providing the contractually required compensatory education for the 2015–16 school year; (4) violated the WLAD by discriminating against him based on his disabilities; and (5) violated the FERPA by refusing to furnish access to his education records after he transferred to the Shoreline School District. *See* Dkt. 1 at 8–19.

CKSD argues all of Tuttle's claims are precluded by the two prior settlement agreements and characterizes this lawsuit as an attempt by Tuttle to get a "third bite at the apple." Dkt. 12 at 5, 14. Specifically, CKSD contends that the First Settlement Agreement resolved Tuttle's IDEA,

Section 504, and WLAD claims, and that Tuttle relinquished any claim for breach of the First Settlement Agreement in the Second Settlement Agreement.

Tuttle responds that his claims are not precluded because CKSD breached the First Settlement Agreement. Tuttle contends that CKSD is attempting to receive the benefit of the First Settlement Agreement (the dismissal of his claims with prejudice) while failing to perform by providing the contractually-required compensatory education under that agreement. Tuttle denies that he dismissed his breach of contract claim in the Second Settlement Agreement.

**A. Tuttle's claim for breach of the First Settlement Agreement is not precluded by the Second Settlement Agreement.**

Tuttle's Complaint alleges that CKSD breached the express terms of the First Settlement Agreement by not providing compensatory education services to him during the course of the 2015–16 school year. Dkt. 1 at 15–17. According to Tuttle, in addition to breaching the settlement agreement, CKSD was unjustly enriched because the District received the benefit of the Tuttles dismissing their due process complaint and claims with prejudice, while failing to perform its obligations under the contract by providing the agreed upon compensatory education services.[2] *Id*.

CKSD argues that Tuttle's claim for an alleged breach of the First Settlement Agreement is precluded by the Second Settlement Agreement. Dkt. 12 at 8. CKSD observes that under the Second Settlement Agreement, "Tuttle agreed to release and waive any clams or causes of action

---

[2] "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) (citing *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12 (Wash. Ct. App. 1991). Although neither party addresses this issue, it is unclear to the Court how unjust enrichment would apply to Tuttle's breach of contract claim given the contractual relationship between the parties vis-à-vis the two settlement agreements.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 7

arising under the IDEA between March 1, 2014 and January 15, 2015, including claims or causes of action that arose out of or relate to the District's provision or attempt to provide IEP services to or for Student." *Id*. (internal quotation marks omitted). CKSD contends that under the doctrine of anticipatory repudiation "to the extent [Tuttle] has a viable breach of contract claim, it arose on January 5, 2015 when CKSD notified him that it would not provide him with the compensatory education unless and until Mr. Tuttle resided within the boundaries of CKSD." Dkt. 16 at 6; *see also* Dkt. 12 at 9.

Tuttle responds that CKSD's Prior Written Notice letter cannot be construed as an anticipatory repudiation by the District, because "[n]othing in that Prior Written Notice says the District is permanently refusing to honor the February 18, 2014 Settlement Agreement." Dkt. 14 at 3. Tuttle also argues that "[a]nticipatory breach is not a mechanism for the breaching party to avoid liability; it is a remedy for the nonbreaching party to obtain performance and damages for the breach without being required to wait until performance is due." *Id*. at 2. Even if the Court were to construe CKSD's Prior Written Notice letter as an unequivocal repudiation of the First Settlement Agreement, Tuttle contends that his breach of contract claim is still not precluded because it is distinct from his IDEA claims which were the subject of the Second Settlement Agreement. *Id*. at 7.

1. <u>To the extent CKSD's Prior Written Notice can be considered an anticipatory repudiation, it does not bring Tuttle's breach of contract claim under the scope of the Second Settlement Agreement.</u>

"An anticipatory breach occurs when one of the parties to a bilateral contract either expressly or impliedly repudiates the contract prior to the time for performance." *CKP, Inc. v. GRS Const. Co.*, 821 P.2d 63, 74 (Wash. Ct. App. 1991). An anticipatory breach must be a total refusal to perform, and cannot be implied from doubtful and indefinite statements that performance may or may not take place. *Wallace Real Estate Inv., v. Graves*, 881 P.2d 1010,

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 8

1019 (Wash. 1994); *see also Lovric v. Dunatov*, 567 P.2d 678 (Wash. 1977) (a repudiation must be a "distinct and unequivocal refusal to perform."). "Repudiation of a contract by one party may be treated by the other as a breach which will excuse the other's performance. Whether facts have been established showing repudiation is a question for the finder of fact." *CKP, Inc.*, 821 P.2d at 74.

The parties do not dispute that Tuttle agreed to release and waive any clams or causes of action arising under the IDEA between March 1, 2014 and January 15, 2015 as part of the Second Settlement Agreement. CKSD argues that under the doctrine of anticipatory repudiation, "to the extent [Tuttle] has a viable breach of contract claim, it arose on January 5, 2015 when CKSD notified him that it would not provide him with the compensatory education unless and until Mr. Tuttle resided within the boundaries of CKSD." Dkt. 16 at 6. According to CKSD, because its anticipatory repudiation occurred "squarely within the time frame covered by the Second Settlement Agreement," Tuttle is forever barred from bringing his breach of contract claim in this lawsuit. *Id*. at 7. CKSD's argument misconstrues the purpose and application of the doctrine of anticipatory repudiation.

Various treatises and cases discussing anticipatory repudiation describe the doctrine in terms of excusing the non-repudiating party's performance as well as providing for an election of remedies. *See e.g.*, Restatement (Second) of Contracts § 253(2) (1981) ("Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance."); Wash. Pattern Jury Instr. Civ. WPI 302.04 (6th ed.) ("Anticipatory breach or repudiation may be asserted by a plaintiff to excuse or discharge the plaintiff's duty to perform a condition precedent.") (citing *Artz v. O'Bannon*, 563 P.2d 674 (Wash. Ct. App. 1977); 23 Williston on

Contracts § 63.33 (4th ed.) (explaining how an anticipatory repudiation by one party to a bilateral contract provides options for the non-breaching party); *Roehm v. Horst*, 178 U.S. 1, 13 (1900) (noting a repudiation "give[s] the promisee the right of electing either to . . . wait till the time for [the promisor's] performance has arrived, or to act upon [the repudiation] and treat it as a final assertion by the promisor that he is no longer bound by the contract").

Against this backdrop, CKSD attempts to use its own anticipatory repudiation of the First Settlement Agreement as a sword, arguing Tuttle's breach of contract claim accrued on a date certain — January 5, 2015 — a date covered by the Second Settlement Agreement. In support of this argument, CKSD cites to several cases which discuss what types of communications are sufficient to convey a party's refusal to perform, and argues that the District's Prior Written Notice letter was an unequivocal repudiation of its obligations under the First Settlement Agreement. Dkt. 12 at 10–12; Dkt. 16 at 8–9. CKSD, however, cites to no authority which suggests that a *repudiating party* can go on the offensive and use its own repudiation as a means of insulating itself from liability for a breach of contract claim, as it attempts to do here. CKSD's argument turns the doctrine of anticipatory repudiation on its head by forcing Tuttle to immediately act upon the District's alleged repudiation. But this runs counter to the well-established principle that an anticipatory repudiation "ripens into a breach prior to the time for performance only if the promisee 'elects to treat it as such.'" *Franconia Assoc. v. United States*, 536 U.S. 129, 143 (2002) (citing *Roehm*, 178 U.S. at 13); *see also* 23 Williston on Contracts § 63.33 (4th ed.) (listing a non-breaching party's options after repudiation but prior to performance).

Just because CKSD sent Tuttle the Prior Written Notice on January 5, 2015 does not necessarily mean that Tuttle was obligated to treat the letter as a breach, and promptly bring

suit.[3] As the non-repudiating party, Tuttle would have had the option to immediately sue, although he could also seek assurances from CKSD or await the time for performance (in this case for the 2015–16 school year) before bringing suit for breach of the First Settlement Agreement. In short, whether the Prior Written Notice constitutes an immediate breach is an election that Tuttle gets to make as the non-breaching party, and not a decision that CKSD can dictate as the repudiating party. To determine otherwise would create an awkward and unjust result by allowing the repudiating party to escape liability for its alleged breach of contract. The Court declines CKSD's invitation to apply the doctrine of anticipatory repudiation in this manner.

2. <u>Tuttle's breach of contract claim was not resolved by the Second Settlement Agreement merely because it was a "focal point" of his second due process complaint.</u>

Next, CKSD contends that Tuttle has both raised and dismissed with prejudice his breach of contract claim. CKSD essentially argues that because its alleged breach of the First Settlement Agreement was a focal point of Tuttle's second due process complaint, which was resolved by the Second Settlement Agreement, Tuttle cannot re-litigate his breach of contract claim in this lawsuit. Dkt. 16 at 2–4.

Tuttle responds that the language in the Second Settlement Agreement did not absolve CKSD of its responsibilities under the First Agreement to provide compensatory education for the 2015–16 school year and therefore does not preclude his breach of contract claim. Dkt. 14 at 6–7.

---

[3] The Court assumes for purposes of the parties' arguments that the Prior Written Notice letter was an anticipatory repudiation, but notes that whether an act constitutes an anticipatory repudiation is typically a determination for the factfinder. *See CKP, Inc.*, 821 P.2d at 74 ("Whether facts have been established showing repudiation is a question for the finder of fact.").

While there is no doubt that the second due process hearing request referenced what the Tuttle's perceived to be failures by CKSD to live up to its obligations under the First Settlement Agreement, it does not necessarily follow that the Second Settlement Agreement resolved all of Tuttle's potential claims against CKSD. Indeed, CKSD's argument is undermined by plain language of the Second Settlement Agreement:

> 2. **Waiver and Release**. Except for the obligations and liabilities created under this Agreement, Student . . . hereby fully, finally and irrevocably waives, releases and discharges the District . . . from any and all liabilities, claims, demands, debts, or causes of action *arising under the IDEA between March 1, 2014 and January 15, 2015,* . . . that arose out of or relate to the District's provision or attempts to provide IEP services to or for Student during that time period. *Student's waiver and release does not extend to any claims arising outside this time period.*
> . . .
> 6. **Entire Agreement**. This Agreement contains the entire Agreement between the Parties, and supersedes any prior agreements concerning the subject matter. *This Agreement does not supersede any Party's obligations under the Settlement Agreement entered on February 18, 2014 except to the extent that agreement concerned IDEA claims arising between March 1, 2014 and January 15, 2015. . .*

Dkt. 17-4 at 2–3 (emphasis added).

Nothing in the language above would seem to relieve the District of its contractual obligation to provide Tuttle with compensatory education for the 2015–16 school year as required by the First Settlement Agreement. If CKSD believed it was bargaining with Tuttle for a release of his claims stemming from the District's non-provision of compensatory education for the 2015–16 school year, it would have behooved CKSD to include language to that effect in the Second Settlement Agreement. To be sure, the First Settlement Agreement was much more expansive in specifically identifying the claims that Tuttle was waiving and releasing as part of

that agreement.[4] Conversely, the Second Settlement Agreement is much briefer and by its express terms "does not supersede any Party's obligations under the [First Agreement] except to the extent that agreement concerned IDEA claims arising between March 1, 2014 and January 15, 2015." Dkt. 17-4 at 3. As explained in Part III.A.1 *supra*, CKSD does not establish that the breach of contract claim is an IDEA claim arising during this window.

CKSD lumps Tuttle's breach of contract claim into the claims disposed of with prejudice by the Second Settlement Agreement. But neither the express terms of the Second Settlement Agreement nor CKSD's unorthodox use of anticipatory repudiation preclude Tuttle's breach of contract claim in this lawsuit. Accordingly, CKSD's motion for summary judgment on the breach of contract claim (Claim 3) is **DENIED**.

**B. There are disputed issues of material fact which preclude summary judgment on Tuttle's IDEA, Rehabilitation Act, WLAD, and FERPA claims.**

Tuttle alleges CKSD denied him a FAPE under the IDEA (First Claim) and Section 504 of the Rehabilitation Act (Second Claim); violated the WLAD by discriminating against him based on his disabilities (Fourth Claim); and violated the FERPA by refusing to furnish access to his education records after he transferred to the Shoreline School District (Fifth Claim). Dkt. 1 at 8–19.

CKSD seeks to enforce the First Settlement Agreement which covers all claims prior to February 18, 2014, and specifically precludes Tuttle from re-litigating his IDEA, Rehabilitation Act, and WLAD claims.[5] Dkt. 12 at 7. CKSD observes that Washington courts favor amicable

---

[4] For example, the First Settlement Agreement expressly stated that Tuttle was relinquishing any claims arising under the IDEA, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, the Washington Constitution, and the WLAD. *See* Dkt. 17-2 at 4.

[5] CKSD suggests that the FERPA claim, which arose after the First Settlement, is precluded by catch-all language in the Second Settlement Agreement. Dkt. 12 at 7–8.

settlement of disputes and are inclined to view such agreements with finality. Dkt. 16 at 7. Tuttle argues that CKSD has failed to perform its obligations under the First Agreement and that its alleged breach of that contract "precludes the District from seeking to enforce Tuttle's end of the agreement [sic] not to pursue the full spectrum of remedies available for the underlying failure to provide a FAPE." Dkt. 14 at 6.

"A compromise or settlement agreement is a contract, and its construction is governed by the legal principles applicable to contracts. It is subject to judicial interpretation in the light of the language used and the circumstances surrounding its making." *Riley Pleas, Inc. v. State*, 568 P.2d 780, 783 (Wash. 1977). Washington courts observe "the general rule that a breaching party cannot demand performance from the nonbreaching party." *Parsons Supply, Inc. v. Smith*, 22 Wash. 591 P.2d 821, 823 (Wash. Ct. App. 1979); *see also Lea v. Young*, 12 P.2d 601, 604 (Wash. 1932) ("Furthermore, it is the general rule in nearly all jurisdictions that a party to a contract cannot breach it, and thereby secure for himself some right or advantage to the detriment of the other party thereto."). A party is barred from enforcing a contract that it has materially breached. *Rosen v. Ascentry Technologies, Inc.*, 177 P.3d 765, 767 (Wash. Ct. App. 2008); *see also Jacks v. Blazer*, 235 P.2d 187, 191 (Wash. 1951) ("A breach or non-performance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty."). The materiality of a breach is a question of fact. *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 317 P.3d 543, 550 (Wash. Ct. App. 2014) (citing *Bailie Commc'ns*, 765 P.2d at 342.).

Construing the evidence in the light most favorable to the non-moving party, there is a genuine dispute of material fact as to whether CKSD breached the First Settlement Agreement. While CKSD is correct that Washington courts favor amicable settlements and treat such

arrangements with finality, "[t]his does not mean, however, that courts must interpret settlement agreements to forever bar the revival of original claims even if breached." *Rosen*, 177 P.3d at 769. Whether Tuttle is free to pursue his IDEA, Rehabilitation Act, and WLAD claims will necessarily hinge on the jury's determination of whether CKSD materially breached the First Settlement Agreement. Accordingly, CKSD's motion for summary judgment on these claims is **DENIED**.

### IV. CONCLUSION

Defendant's Motion for Summary Judgment [Dkt. #12] is **DENIED**. The parties shall file a Joint Status Report within 30 days of this Order identifying any remaining deadlines and proposing potential trial dates.

IT IS SO ORDERED.

Dated this 27th day of August, 2018.

Ronald B. Leighton
United States District Judge